IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:21-cr-00010 |
| | ) | |
| ANNIE NICOLE RITENOUR | ) | |
| | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

In the summer of 2021, the defendant, Annie Nicole Ritenour ("Ritenour"), angry with the Victim in this case, sought to hire a hit-man to have him murdered. In furtherance of her plan, she reached out to a website on the "darknet" ("Website") that advertised murder-for-hire services. Ritenour set up an account with the Website, sent a photo and identifying information of the Victim, and paid over $3000 in Bitcoin to insure the murder took place. Unbeknownst to Ritenour, the Website was fraudulent and then under investigation by the Federal Bureau of Investigation. After her arrest, Ritenour expressed remorse for her conduct and cooperated fully with law enforcement.

The Presentence Investigation Report ("PSR") outlines the defendant's sentencing exposure. Ritenour's criminal history score is zero which results in a criminal history category I. The defendant pled guilty to a single count of using a facility of interstate commerce in the commission of murder for hire, in violation of 18 U.S.C. § 1958(a). The United States Sentencing Guidelines ("Guidelines") suggest a sentence of 120 months' incarceration. PSR, ¶¶ 62.

The parties, however, entered into a written plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. PSR, ¶ 2. Pursuant to that agreement, the parties agreed the defendant shall be sentenced to a period of incarceration within the range of 36 to 87 months. *Id.*

1

For reasons detailed more fully herein, the United States believes a sentence near the middle of the Rule 11(c)(1)(C) range would be reasonable and would satisfy the Section 3553(a) factors. Accordingly, the United States recommends a sentence of 48 months' incarceration to be followed by three years of supervised release and a $100 Special Assessment.

## FACTUAL BACKGROUND

The PSR accurately details defendant Ritenour's conduct in this case. PSR, ¶¶ 4-19. Notably, in June 2021, Ritenour became angry with the Victim in this case, a person with whom she had a child in common. *Id.*, ¶ 9. Her anger had reached such a point she began to take steps to hire a hitman to have the Victim killed. Her internet research led her to the Website on the "darknet" that offered murder-for-hire services. *Id.* ¶ 5. In particular, the Website included statements such as:

- We can kill any person you want, as long as it is not a president or very important person that is guarded by the military.

- We can make the murder look accidental, so that Police will not suspect anyone.

- We also do kidnappings, beatings, and set fire to properties.

- Murder, wet work, assault, arson can be easily provided worldwide by our experienced strongmen via a secure way, while you remain fully anonymous and your order confidential. Thousands of happy customers recommend our products and services such as drugs, guns, assault, arson, and murder.

- You can place the order on our marketplace anonymously without providing your name, email, phone number or address. Only description about the job and the mark.

- You will need to provide proof you have the funds available, but you pay after the job is completed.

*Id.* It was clear from their advertisement the Website was offering just what Ritenour was looking for - so she set up an account. *Id.* ¶ 6.

Having set up an account on the Website, Ritenour placed her order. Titling her order "shoot and get away" she left no doubt as to her intentions. *Id*. Along with the order, Ritenour included a picture of the intended victim, his work place address, and his work hours. *Id*. Her order included the following instructions:

> **I am just looking for a simple quick job. The address of the person will be the best place to make the target, as it is his workplace (lowe's). He works 6am to 3 pm monday through friday. He drives a burgundy 2007 Hyundai Santa Fe, license plate JES-7780. The days/time I mentioned will be the best time and place, I would say wait until he's off at 3 and then make your move."**

*Id*.. Ritenour's very specific instructions made her desire clear and made the identification of the Victim/target easy.

Records show that after the order was placed Ritenour made a total of three transactions totaling $3200 to the Website between June 23, 2021 and June 24, 2021. *Id*. ¶ 7. The payments were made using a Bitcoin ATM in Northern Virginia. *Id*. On June 25, 2023, Ritenour sent an e-mail to the Website asking "How would I show proof that I have the bitcoin ready for a job to be done?" *Id*. ¶ 8. Shortly thereafter, "Juan" from the "Sinaloa Cartel Cyberteam" responded, "hi, I see you have added funds to escrow. this is proof you have funds please add difference and we can do job." *Id*. This e-mail exchange demonstrates that Ritenour knew how to contact the Website to ask questions. Although she knew how to do so, she never once told those affiliated with the Website that she did not want to go through with her order. The reason, she was serious about wanting the Victim killed.

In an attempt to further corroborate Ritenour's intent to have the Victim murdered, an undercover law enforcement agent placed multiple calls to Ritenour shortly after Ritenour's plan was uncovered. The undercover agent only identified himself in vague terms and never specifically mentioned the order Ritenour had place. Ritenour never returned the undercover

agent's calls.

On October 27, 2021, Ritenour was arrested on a federal criminal complaint and was interviewed by law enforcement. *Id*. ¶ 9. During the interview Ritenour admitted to: sending the photo of the Victim and corresponding instructions to the Website; sending the follow up e-mail asking how to show proof she had deposited the Bitcoin; that she was angry with the Victim for the way he had left her and felt like she could not "deal with him being here"; and sending the payment to the Website *via* Bitcoin. *Id*. She further told law enforcement that at some point she realized what she had done was a mistake so she deleted her account, but that she never advised the Website of her desire to withdraw her order to kill. *Id*. ¶ 19. To her credit, Ritenour did acknowledge to the agents that she was "stupid and ashamed that she would do such a thing," referring to the murder-for-hire. *Id*.

## DISCUSSION

District courts generally must perform the following four steps in sentencing defendants: (1) "properly calculate the sentence range recommended by" the advisory Guidelines; (2) "determine whether a sentence within that range and within statutory limits serves the factors set forth in [18 U.S.C.] § 3553(a) and, if [it does] not, select a sentence that does serve those factors;" (3) implement any applicable mandatory statutory limitations; and (4) articulate, on the record, "the reasons for selecting the particular sentence" and especially, if applicable, "explain[] why a sentence outside of the Sentencing Guidelines range better serves the relevant sentencing purposes set forth in § 3553(a)" than one within it. *United States v. Green*, 436 F.3d 449, 456 (4th Cir. 2006); 18 U.S.C. § 3553(a). This memorandum outlines these factors and the bases for the United States' recommended sentence.

A. **Section 3553(a) Sentencing Factors**

   i. **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

As outlined above, Ritenour's conduct was egregious and warrants a significant sentence. Taking steps to have another person murdered is conduct justifying multiple years imprisonment. Her crime not only effected the Victim, but her child, her family, and society as a whole.

Save for a couple traffic offenses, Ritenour has no criminal history. PSR, ¶ 37. Further, she has no substance abuse history. These factors warrant consideration by the Court and bode well for her anticipated performance on federal supervision.

Ritenour graduated from high school in 2014. *Id*. ¶ 56. She has no specialized training or skills, but has expressed an interest in participating in vocational courses during any period of incarceration. *Id.* ¶ 57. Though currently unemployed, Ritenour has a history of gainful employment. *Id*. ¶ 58.

The seriousness of the offense is offset only slightly by certain positive attributes of the defendant. A sentence of 48 months' incarceration takes both into account and achieves the objective set forth in this 3553(a) factor.

   ii. **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, Provide Just Punishment, and Provide Adequate Deterrence**

This factor may weigh in favor of a sentence of incarceration higher than recommended by the United States, but is offset by other 3553(a) factors as described within this Sentencing Memorandum. Simply thinking about hiring someone to kill another human being is bad enough, but taking affirmative steps to do so is simply horrific. Given the nature of the relationship between the defendant and the Victim and what they share in common makes the criminal conduct even worse. In arriving at a just recommendation in this case, however, the United States has taken into

5

account the fact that the Website contacted by Ritenour was a fraud[1], the remorse demonstrated immediately by Ritenour when confronted by police, Ritenour's level of cooperation with the investigation, and her significant mental health history.

>    iii. **The Need for the Sentence to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

One of the most significant factors in this case is Ritenour's mental and emotional health. The undersigned will not disclose or discuss the significant information adequately set forth in the PSR, but acknowledges Ritenour's long struggle with a variety of mental health issues. PSR, ¶¶ 50-54. The role her mental health issues played in the commission of the offense is difficult to say with any specificity, but one must accept that it played a role. But her mental and emotional health cannot serve as an excuse for her criminal conduct. It can, however, serve as a reason to impose a sentence below the guideline range of 120 months' incarceration and to set conditions of supervision that would allow Ritenour to address her mental health issues. To her credit, since her arrest, Ritenour has sought treatment and is believed to be earnestly addressing her problems. The United States recommends that she be mandated to continue with mental health treatment while under supervision.

>    iv. **Applicable Sentencing Range and Kinds of Sentences Available**

The PSR accurately details the Guideline calculation. PSR, ¶¶ 24-34. With a criminal history category of I and an offense level of 34, the Guideline sentencing range is 151 months to 188 months' incarceration. *Id.,* ¶ 62. However, the statutory authorized maximum sentence of 10 years is less than the minimum of the applicable guideline range; therefore, the guideline term of imprisonment is 120 months. Id. The parties have reached a plea agreement pursuant to Rule

---

[1] The fraudulent nature of the Website was unknown to Ritenour.

11(c)(1)(C) of the Federal Rules of Criminal Procedure requiring the Court to impose a sentence of incarceration between 36 and 87 months. Id. ¶¶ 2, 63. The Court must also sentence the defendant to not more than three years of supervised release. *Id.*, ¶ 65.

> v. **Pertinent Policy Statement**

All relevant policy statements are cited in this memorandum where appropriate.

> vi. **Sentencing Exhibits and Testimony**

The United States does not intend to present any additional evidence at the sentencing hearing unless it is required to do so to rebut any arguments or evidence raised by the defendant.

**B. The Impact of Ritenour's Crime on the Victim**

The impact of Ritenour's crime on the Victim and his family cannot be overstated. The Victim Impact Statement ("VIS") submitted by the Victim describes the lasting effect of Ritenour's criminal conduct has had on the Victim's mental and physical well-being. One can hardly imagine the trauma resulting from the discovery that a person with whom they shared a child and placed so much trust would take steps to have them murdered. The post-crime anxiety, fear, and depression being experienced by the Victim are real and will likely take years of counseling and treatment to manage. The long-lasting and serious harm that Ritenour has caused to the Victim is the direct result of Ritenour's criminal conduct and should be taken into by this Court when fashioning an appropriate sentence.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant to 48 months' incarceration to be followed by three years of supervised release. The United States further recommends that during her period of supervised release, Ms. Ritenour be required to cooperate with mental health treatment as directed by the probation office.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

/s/Ronald M. Huber
Assistant United States Attorney
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902
Tel: 434.293.4283
Ron.Huber@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been provided via electronic means via the Court's CM/ECF filing system this 13th day of November, 2023.

/s/ Ronald M. Huber
Assistant United States Attorney